Good morning, Your Honors. Eric Hurst, an Assistant Federal Defender on behalf of Pellant and Rant, Britt. The issue here, the only issue here is the imposition of occupational restrictions as a condition of probation, or excuse me, a condition of supervised release. 18 U.S.C. 3583 gives a sentencing judge broad discretion in opposing a condition, but they must be consistent with the appropriate quality standards set aside. That's expressly included in the statute. Pursuant to that directive, the Sentencing Commission established U.S.S.G. 5F1.5, which expressly sets forth conditions governing the imposition of occupational restrictions. The Sentencing Commission established U.S.S.G. 5F1.5, which expressly sets forth conditions  but they must be consistent with the appropriate quality standards set aside. Here, Mr. Britt was ordered to notify all of his clients of his criminal history and the fact that he was under the supervision of the probation office and the courts. Mr. Gerson, tell me if you – tell me what you think this means. You got a copy of the red brief? Yes, I do. Look at page 16 of the red brief. I have it. In the first full paragraph, it says, in this case, defendant was originally ordered to compile a special condition 13. See that?  Which requires him to notify third parties of risks also. And then it says, that paragraph concludes, special conditions 8 and 9 merely reiterate 13. Is that true? No, I don't think it is, because that's special – or standard condition 13, that's a standard condition of supervised release that applies in every case. Yeah. To argue that that allows the imposition of employment-related notification requirements would essentially swallow up 5F1.5. If these are just treated as standard notification requirements – Well, what does it apply to if it – you say it applies to everything except employment? 13, I mean? Yes, I believe so. I believe that they – you know, there can't be – yes, I think that there are general notification requirements. I know that the Ninth Circuit hasn't considered it. Other courts have looked at occupational restrictions, notification requirements. But I thought the general notification requirement included, you know, in connection with employment. That's not your understanding? No, I don't believe so, because that's a general notification requirement. The occupational restrictions are a specific requirement. To allow notification, employment-related notification requirements to be included, it would essentially eliminate 5F1.5, or in large extent, it would restrict it. But it seems as though 13 is broader than 9. If it – That the general condition, that's a standard condition, is broader than 9, because it allows – it requires notification based on risk that may be occasioned by the defendant's criminal record or personal history or characteristics. And the special condition seems to be based solely on – or its predicate has to be the offense of conviction. And you don't challenge number 13. Well, I do. I think that 13 applies in every case. 13 was in existence prior to the imposition of these conditions. If 13 authorized the imposition of the occupational restrictions, that could have been done from the get-go. Well, your position is 13 can't be applied to the employment risks because it would contravene the guidelines. Yes. It would essentially swallow 5F1.5. You know, this – 13 is a broad general notification requirement. 5F1.5 deals specifically with occupational restrictions. It was enacted pursuant to statute, and it sets very – there's at least three requirements of 5F1.5 that apply to occupational restrictions. And I think that because this clearly was an occupational restriction, 5F1.5 needs to be considered. All right. Let me ask you one more point that the government makes, and that is that the – what was this conviction, South Carolina? Yes. But the probation report in South Carolina identified conduct in connection with this offense that would justify the imposition of employment restrictions, right? Well, I object to the consideration of that pre-sentence report. That was not a part of the record. That was utilized by the sentencing court in South Carolina. It was not before this court. But even if it were, it makes a reference to the past crime. Right. The next question, right, if it were. Right. If it were, does it satisfy the directly related or the offense of conviction requirements of 5F? I would have to find out more details about what – I think that that would be an arguable issue. But it was not before the court. We don't know the details of what the false identification document that a person used to travel across the country were. Well, I think it's pretty clear. I don't have it right before me. But it's one sentence about the defendant admitted that he created a false ID card so I forgot some woman so-and-so could travel to California, something like that. It's paragraph 13. It says, And this was in connection with the distribution of methamphetamine, which is the offense of conviction in this later case. In other words, I think it's part of the relevant conduct. Right. But assuming that's in the – well, it is in the probation report. It is not in the probation report. It was in the original probation report. I have to say, it's in the probation report. That was not presented to the court. I know that. But as Judge Wardlaw says, if that were before the judge, isn't that a proper basis to, you know, to impose this guideline restriction? That would be a factor for the court to consider. But the court never considered it. So you want us to go through the ritual of sending it back so we can look at it and impose the same conditions? Well, my feeling is the court didn't consider the factors here. There was a general request that the conditions be imposed. The judge went along with it. There was no indication that he considered any relationship between the criminal history and the requested restrictions. No consideration whether the restrictions were the least onerous possible, which is required by 5F1.1. The court gave absolutely no consideration to 5F1.5. Are you saying the judge wasn't aware of the restriction of the guideline? He certainly it was it was expressed in my in my written. I mean, you objected, right? Yes. And he did not address those at all. The probation office did not object or address those at all. They were totally ignored by both probation. Well, I guess you wouldn't object. Well, there was not there was not a probation report, but there was some kind of memorandum from the probation officer. It's a dispositional memorandum. Did you see that before? Yes, I did. And did you object to it? Yes, I did. All right. But the district court never dealt specifically with your objection. It did not. And it specifically relied on that memorandum. It relied on that memorandum. The memorandum did not deal with the objections or with 5F1.5. Both the memorandum and the district court ignored the guideline. So presumably, speaking hypothetically, if we were to remand it, well, you know, the government contends that district court could have relied on this sentence in the in the PSR. And if that were before the district court, as you said, that's a matter the district court could consider. But then, of course, at that time, I suppose you would have the opportunity to argue against reliance on that as a basis for imposing the condition. That's correct. Once it's clear to the district court that it has to comply with this guideline, right? Yes. All right. I mean, the court never considered the requirements of 5F1.5 in imposing the conditions. And that's my real argument here. I would like to reserve that argument. But I wanted to ask you, what do you think your client's business consists of doing? It's a legitimate credit repair business. Most of his cases. What does that mean, though? They're referred from mortgage brokers primarily, people who have a hard time getting credit. They get copies of their credit report. They review it to see if there is inaccurate items included. They're deleted. If there's items that are negative, then they do what they can to mitigate them. There's things like reducing the number of accounts that are open, making payments on past due accounts. It's a legitimate business. In fact, it's still going on. He now has five employees. The business is doing well. He engaged in identical employment while on pretrial supervision prior to sentencing. The original sentencing court didn't impose these conditions or anything similar. He's been doing this for a year and a half since his release, and a year and a half prior to sentencing with no problems whatsoever. And, again, I mean, credit repair sort of has a bad ring to it, but it's a legitimate. It's not someone who says, give us $500 and we'll fix your credit. What they do is they go over a credit report and they address the issues and do what they can to mitigate negative issues. All right. It does have a bad ring. It does. It does. But I'm trying to point out that there's no allegation this is an inappropriate business here. It's just the allegation is that due to the nature of the business, Mr. Britt has access to individuals' personal financial information, and the probation office is concerned that he could use that information to engage in identity theft. All right. We used up your time for you, so we'll give you a minute for rebuttal. All right? Thank you. Okay. Good morning, Your Honor. Serena Santos representing the United States. Your Honor, the issue here is whether this is a notification requirement allowed under regular conditions to supervise release or whether this is an occupational restriction. And our position throughout has been that this is a regular notification requirement that is premised on 35- When you say the regular, you mean the condition 13? Condition 13 and that the new conditions, 8 and 9, are merely an expansion of that in light of the probation officer's concern that this defendant, within 22 days of entering supervision in our district, reoffended. But it seems to me it is problematic to apply that regular condition 13 to this employment picture in the face of the guideline, which requires, you know, certain findings to be made, factors to be found before it can be applied. And I think it's, I know, in fact, it's prevalent everywhere, standard condition, even before the guidelines went into effect, right? Yes, Your Honor. However, this notification requirement does not prohibit, which is what 5A F1.5 regulates. But the case law says, you know, if it impacts or restricts employment, that's enough. It doesn't have to prohibit. That is true, Your Honor. But in this case, we don't have any. We have merely the assumption that this defendant will lose clients because he'll have to inform them that he's on supervised release. However, there's no evidence that it will result in what he claims, which is a total destruction of his business. It is true that it may result in loss of clients. However, Think about that, because you have someone who has a credit repair business, which probably requires some personal financial information to be given by the client to the person who's going to do the credit repair. And he's going to tell these clients, well, you know, I've been, there might be a risk here because I've been convicted in the past of making fraudulent identification cards. Who's going to give them the information? Well, It's virtually, I think, would put, I mean, I wouldn't. I mean, it would put a stop to this business, because in making that notification would basically be saying, if you give me your personal information, you are at risk, that I may use that information to make a fraudulent ID card, and who knows what else the probation officer might require. You know, maybe he has to say, as I did in the past, in order to distribute methamphetamine. I don't think his business would go very far after making that statement. We don't, the government does not disagree that it's true that notifying potential clients that he is under supervision may have a deleterious effect. In fact, but that is precisely what the probation officer is trying to ward off. So you can see that there is this issue that's going to really affect his business. So then why do you think that the findings under 5F1.5 don't need to be made, given that, who knows, if the district court had made these findings based on appropriate information, I think you'd have a different case. But the district court didn't make these findings and didn't have information in front of him that the defendant had engaged in violent ID activity previously. The court relied on the probation officer's representations regarding his prior record. The court also heard the defendant's arguments regarding the fact that this was, in his mind, an occupational restriction that would result in this particular condition. But the probation officer, as Judge Wardlaw says, made no attempt to comply with the guideline. He didn't give any justification under the guideline for imposing the condition. If you, when you read the probation officer's dispositional memorandum and also his statements to the court on the day of the hearing, she said that she was concerned about the risk to third parties, the life of this defendant's prior record. I understand that. But what I'm saying is the probation officer's memorandum makes no attempt to justify that condition under the guidelines. That is correct, Your Honor. She did not specifically state that because in her memorandum what she stated was her concerns and the fact that she was seeking the court's ---- I know, but the guideline doesn't allow the imposition arising out of a general concern. It's got to be specifically related to the relevant conduct. Well, I would submit, Your Honor, that she gave the judge specific instances justifying her concern. No, not with respect to relevant conduct. She just, you know, she relied on the criminal history, which is not mentioned in the guidelines. Well, number one, the argument is that it is a notification requirement that is an expansion of Condition 13. If you're rejecting that argument and it's still deemed to be an occupational restriction, it is the government's position that she did provide the judge with sufficient facts and that he relied on those facts. He didn't specifically address the issue of what the defendant may have done with identification information. The probation officer's memorandum doesn't even mention, you know, Guideline 5F1.5, right? That's correct, Your Honor. As if it didn't exist. You don't have to comply with it. Well, Your Honor ---- You pretend like it's not there. No. What? That's what the probation officer's memorandum does. It pretends like it's not there. Your Honor, the way that the probation officer viewed and presented these proposed conditions to the court were on the basis of an expansion of Condition 13 that she felt were necessary in light of the defendant's renewed criminal activity. All right. Do you have another question? I'll submit. Thank you. Thank you. We'll give you a minute. Anything else? Just very briefly, 5F1.5 requires three determinations. I don't believe the court made any of them here. I believe that was an abuse of discretion. And I believe the conditions are inappropriate or the occupational restrictions are inappropriate for that reason. If there's no question, so sit down. Okay. We thank both counsel for their argument. This case is submitted for decision.
judges: Noonan, Tashima, Wardlaw